UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EMPLOYERS MUTUAL CASUALTY          )
COMPANY, ET AL.,                   )
                                   )
       Plaintiffs,                 )          CIVIL ACTION NO.
                                   )
VS.                                )          3:07-CV-0648-G
                                   )
JUAN MIGUEL BONILLA a/k/a MIKE,    )              **ECF**
ET AL.,                            )
                                   )
       Defendants.                 )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiffs, Employers Mutual Casualty
Company ("EMC") and Emcasco Insurance Company ("Emcasco") (collectively, "the
plaintiffs"), for summary judgment. For the reasons discussed below, the motion is
granted.

## I. BACKGROUND

Jolly Chef Express, Inc. ("Jolly Chef") is in the business of leasing mobile
catering trucks. EMC's Brief in Support of its Motion for Summary Judgment
("Motion") at 2. Juan Miguel Bonilla ("Bonilla") leased one of these trucks -- Truck

219 -- from Jolly Chef.  *Id.*  Bonilla hired Isabel Molina ("Molina") to serve as a cook in Truck 219, and hired Fabricio Fernandez ("Fernandez") to drive the vehicle.  *Id.* On February 13, 2002, after Molina and Fernandez completed their day's route, they returned the truck back to the Jolly Chef lot.  *Id.*  After parking the vehicle, Molina began cleaning the dishes and trays she had used to cook during the day.  *Id.* at 3. Meanwhile, Fernandez poured a flammable liquid, probably gasoline, on the indoor floor of the vehicle's kitchen "to cut the grease that had accumulated on it from cooking in the kitchen."  *Id.*  Fernandez then left to give Bonilla the money he and Molina had earned that day.  While Fernandez was away, Molina turned on a pilot light inside the vehicle, which ignited the flammable liquid and caused a flash fire. Molina was severely injured.

As a result of this incident, Molina sued Jolly Chef and Bonilla in state court. *Id.* at 1.  That suit resulted in a judgment against Bonilla.  *Id.*  Jolly Chef had purchased a commercial general liability ("CGL") insurance policy, as well as an umbrella liability policy, from EMC.  Defendant Juan Bonilla's Brief in Support of his Response to Plaintiff's Motion for Summary Judgment ("Bonilla's Response") at 1. Jolly Chef had also purchased a commercial auto liability policy from Emcasco.  *Id.* All these policies were in effect at the time of the accident.  *Id.*  EMC defended both Jolly Chef and Bonilla in the underlying lawsuit.  EMC then brought this suit "in order to obtain a judicial determination that there is no coverage for the underlying

judgment against Bonilla." Motion at 2. The plaintiffs now move for summary judgment.

EMC argues that there is no genuine issue of material fact as to whether the CGL or umbrella policies cover Bonilla, because Bonilla does not qualify as an insured under those policies. Motion at 3. Further, it argues that the auto policy does not apply because "the underlying accident did not result from the operation, maintenance or use of a covered auto." *Id.*

## II. ANALYSIS

### A. The Summary Judgment Standard When the Movants Bear the Burden of Proof at Trial

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. F.R. CIV. P. 56(c).[*] "[T]he substantive will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

---

[*] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  When, as here, the movants bear the burden of proof at trial on an issue for which they are moving for summary judgment, the movants must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [their] favor." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  Defendants moving for summary judgment on an affirmative defense, as here, must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the defendants; otherwise, there is a genuine issue of fact and summary judgment cannot be granted.  See *Anderson*, 477 U.S. at 248.

Once the moving parties have carried their burden, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  While all of the evidence must be viewed in a light most favorable to the motion's opponents, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movants' summary judgment burden.  *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th

Cir.), *cert. denied*, 506 U.S. 825 (1992).  If the nonmovants' "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## B.  Coverage Under the Commercial General Liability Policy

EMC argues that the CGL policy does not cover Bonilla because he is not an insured under that policy.  Motion at 5.  The CGL policy defines an insured as the "named insured," as well as its executive officers and directors (but only with respect to their duties as officers or directors), its stockholders (but only with respect to their liability as stockholders), and its employees (but only for acts within the scope of their employment).  *Id.* at 6-7.  Here, the named insured is Jolly Chef.  Thus, for Bonilla to qualify as an insured, he would have to be either an officer, director, stockholder, or employee of Jolly Chef.  *Id.*  Bonilla is none of those things, and neither Molina nor Bonilla argue otherwise in their respective responses.  The court is convinced that there is no genuine issue of fact as to whether Bonilla is an insured under the CGL policy.  EMC's motion for summary judgment on the question of whether the CGL policy covers the underlying judgment against Bonilla is granted.

## C.  Coverage Under the Auto Policy

The court comes now to the crux of the disagreement between the parties: whether the auto policy requires EMC to indemnify Bonilla for Molina's judgment against him.  The auto policy contains the following language:  "We will pay all sums

- 5 -

an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." Motion at 15. The parties disagree over the meaning of the phrase "ownership, maintenance or use of a covered auto."

The court will first examine whether the fire arose out of the "use" of the vehicle. The Texas Supreme Court has stated that "[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle." *Mid-Century Insurance Company of Texas v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999). "The use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Id.* If the vehicle is merely "the locational setting for an injury, the injury does not arise out of any use of the vehicle." *Id.* (citing *LeLeaux v. Hamshire-Fannett Independent School District*, 835 S.W.2d 49, 51 (Tex. 1992) (holding that a high school student who jumped out of her seat in an empty school bus and hit her head on the door frame was not "using" the bus, rather, the bus was merely the place she happened to injure herself)). The requirement that the injury arise out of the use of a vehicle as a vehicle is the first element that must be shown before a Texas court will hold that an injury falls within the "use" coverage of an auto policy. In addition to this element, there are two others: "(2) the accident must have arisen within the natural territorial limits of an

automobile, and the actual use must not have terminated, [and] (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury." *Tucker v. Allstate Texas Lloyds Insurance Company*, 180 S.W.3d 880, 887 (Tex. App.--Texarkana 2005, no pet.).

Here, it is clear that the vehicle was the setting for the injury. Thus, the second element is undoubtedly met. It is also clear that Molina and Fernandez were interacting with the kitchen inside the vehicle when the injuries occurred. The question this court must answer is whether that interaction constitutes a use of the vehicle *as a vehicle*. In other words, whether the first element can be met. Molina argues that "the specifically-intended use of the catering truck was for preparation, transportation, and sale of food at remote locations." Brief in Support of Defendant Molina's Response to EMC's Motion for Summary Judgment ("Molina's Response") at 3. She contends that the food preparation area of the truck had to be clean in order for the truck to serve this purpose. *Id.* Specifically, she argues that there could be no grease on the floor in order for her to stand and cook while the vehicle was moving. *Id.* at 4. Accordingly, she states, "the injury-causing activity (negligently cleaning the grease off the floor) was clearly incident to, and had a connection with, the use of the truck as a vehicle." *Id.*

Put more simply, Molina's argument is that when a vehicle is designed to serve some purpose other than transportation -- here, food preparation -- the vehicle is in

- 7 -

"use" while serving that other purpose.  In support of this argument, Molina cites

*Carroll v. Castillo*, No. 13-99-006-CV, 2000 WL 34592617 (Tex. App.--Corpus

Christi April 6, 2000, no pet.) (not designated for publication).  In *Carroll*, Santiago

Castillo ("Castillo") was injured while using the drilling equipment attached to a Ford

5-Ton drilling rig.  *Id.* at *1.  The owner of the vehicle had purchased an automobile

liability insurance policy to cover the vehicle.  *Id.*  The insurance company argued the

automobile policy did not cover Castillo's injury.  *Id.*  It contended that, because the

"injury occurred while he was drilling rather than operating the vehicle in some other

manner, the vehicle was not in 'use' as contemplated by the policy."  *Id.* at *2.  The

court disagreed.  It reasoned that the term "use" was ambiguous in the policy because

"no specific exclusion states that the policy does not cover the vehicle when it is being

used as a drilling rig as opposed to used as a vehicle."  *Id.* at *3.  The court stated,

"[w]hile this accident may not have stemmed from the 'use of an automobile or

vehicle, as such,' it certainly resulted from the 'use of a drilling rig, as such.'"  *Id.*

Taking into account that "any ambiguities or doubts should be resolved in favor of

the policyholder," the court held that the policy covered the accident.  *Id.*  It stated,

"a reasonable construction of the policy is that a properly foreseen and intended use

of the insured vehicle was as a drilling rig.  Because the injury occurred while it was so

being used, summary judgment was not proper on this ground."  *Id.*

　　　*Carroll* certainly suggests that when a vehicle has an intended purpose other

than transportation, "use" coverage applies to injuries that occur while the vehicle is being employed for that other purpose.  However, *Carroll* is the only Texas opinion that has reached this conclusion.  Moreover, under Texas Rule of Appellate Procedure 47.7(b), opinions designated "do not publish" before January 1, 2003 -- such as *Carroll* -- have no precedential value.  In addition, *Carroll* relies on a false premise.  The holding in *Carroll* rests on the fact that the word "use," in the context of a "use" coverage claim, is ambiguous and should be interpreted in whatever way is most beneficial to the policyholder.  This conclusion shirks the duty of applying the many other Texas cases that have tackled the question of what constitutes use of a vehicle.  See, *e.g.*, *LeLeaux*, 835 S.W.2d at 51; *Lindsey*, 997 S.W.2d at 156; *Tucker*, 180 S.W.3d at 887-88 (deciding whether an injury that occurred while two men were moving a home built aircraft arose out of the use of an aircraft as an aircraft); *McDonald v. Southern County Mutual Insurance Company*, 176 S.W.3d 464, 475-76 (Tex. App.-- Houston [1st Dist] 2004, no pet.) (reasoning that injuries that occurred while two men were walking to get help with a flat tire did not arise out of the use of the vehicle that suffered a flat tire); *Lyons v. State Farm Lloyds and National Casualty Company*, 41 S.W.3d 201, 203, 205-06 (Tex. App.--Houston [14th Dist.] 2001, pet. denied) (holding that the injuries of a woman who fell from a stationary vehicle being used to give hayrides arose out of the use of the vehicle as a vehicle).  Although the courts in all these cases could have fallen back on the conclusion that the word "use" is

ambiguous, none did so.

For this reason alone, the court finds *Carroll* unpersuasive. Additionally, however, *Carroll* states that the accident did *not* stem from the use of a vehicle, as such. *Id.* at *3. According to *Lindsey*, such a finding must lead the court to conclude that the parties were using the vehicle merely as an article of property and that the auto policy does not cover any damages resulting from that use. *Lindsey*, 997 S.W.2d at 156. Under Texas Rule of Appellate Procedure 47.7, *Carroll* has no precedential value. Based on this court's own analysis of the case, it concludes the case has no persuasive value either. *Carroll* ignores analogous Texas cases and incorrectly applies *Lindsey*, the one case the court does attempt to apply.

In fact, this court interprets *Lindsey* as suggesting that auto policies should not cover injuries that occur while a vehicle is being used for a non-transportation purpose. The facts of *Lindsey* are as follows: a nine year old boy went to his father's truck and climbed into the cab through the truck's sliding rear window. 997 S.W.2d at 154. While doing so, the boy "accidentally touched a loaded shotgun resting in a gun rack mounted over the rear window, causing the gun to discharge." *Id.* The buckshot struck a man sitting in an adjacent truck. *Id.* The court held that this accident arose out of the use of the vehicle. *Id.* at 158. It reasoned that entry into a vehicle -- even in the unorthodox way the nine year old boy accomplished that entry -- was a use of the vehicle as a vehicle. *Id.* at 158-59. Entry of a vehicle is closely

related to the transportation function of a vehicle, as the truck cannot transport anyone or anything without a person first entering the vehicle. In addition, the court in *Lindsey* stated that its decision was not based on the fact that the gun rack was attached to the vehicle. *Id.* at 163. Rather, its decision was based on the fact that entry into a vehicle is use of a vehicle as a vehicle. It specifically did not hold that interaction with anything attached to a vehicle is use of a vehicle.

*Lindsey* distinguished its facts from those at issue in another Texas case, where the Texas Supreme Court held that accidentally firing a gun while driving did not constitute a use of the vehicle. *National Union Fire Insurance Company v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141-42 (Tex. 1997). In *Merchants Fast Motor Lines*, the court reasoned that, although the man was driving the vehicle when he fired the gun, there was no relationship between his driving and the gun firing. *Id.* at 142. Merely handling the gun inside the truck was not "using" the vehicle. See *id.*

The facts at issue here are both analogous to the facts of *Merchants Fast Motor Lines* and distinguishable from the facts of *Lindsey*. Cleaning the kitchen of Truck 219 is analogous to handling a gun inside a vehicle. Both actions involve interacting with objects inside of a vehicle that bear no relationship to the vehicle's transportive function. The obvious distinction between the gun and the kitchen is that the kitchen was attached to the truck. In *Lindsey*, however, the court emphasized that merely because an item is attached to the vehicle does not mean that any interaction

- 11 -

with that item constitutes a use of the vehicle as a vehicle.  997 S.W.2d at 163.

Moreover, cleaning a vehicle so that it can function as a mobile kitchen is

distinguishable from entering a vehicle.  Entering a vehicle is necessary to use a

vehicle in almost any way.  Cleaning a kitchen, however, is necessary only to

continued use of the kitchen, *i.e.*, food preparation.  No Texas court has held that use

of a kitchen is use of a vehicle.  Although Molina argues that food preparation was

tied to the transportive function of Truck 219 because the truck was always intended

to transport food, Molina's Response at 4, the court finds this argument

unpersuasive.  The fact remains that Truck 219 could have transported food without

a kitchen.  The kitchen was incident only to food *preparation*, which bears no

relationship to the use of a vehicle as a vehicle.

     This court must make an *Erie* guess about how the Supreme Court of Texas

would rule under the circumstances presented here.  *Erie Railroad Company v.*

*Tompkins*, 304 U.S. 64, 78-80 (1938); *Moore v. State Farm Fire & Casualty Co.*, 556

F.3d 264, 269 (5th Cir. 2009).  The cases discussed above suggest that the Texas

Supreme Court would rule that Molina's interaction with the kitchen inside the

vehicle did not relate to the use of the vehicle as a vehicle.  Only *Carroll*, which is

both non-binding and unpersuasive, could be interpreted to suggest otherwise.  The

court holds that Molina and Fernandez were not "using" the vehicle as defined by

Texas law.

The court next considers whether Molina and Fernandez's interaction with Truck 219 constitutes "maintenance" of the truck. Molina argues that the plain meaning of the word "maintenance" "includes activities such as cleaning the greasy floor, which are necessary to enable a vehicle to perform its transportative purpose." Molina's Response at 7-8. As the court has already held, however, the activities Molina was involved in were not necessary to enable Truck 219 to transport food. The activities were necessary only to food preparation. The plaintiffs' motion for summary judgment on the question of whether the auto policy covers Molina's injuries is granted.

### D.  Coverage Under the Umbrella Policy for Non-Auto Claims

The only remaining issue is the coverage of the umbrella policy. The plaintiffs argue that Bonilla is not an insured under this policy. The umbrella policy contains language nearly identical to the language in the CGL policy defining who is an insured. Appendix to Brief in Support of EMC's Motion for Summary Judgment ("EMC's Appendix") at 108. Similar to the CGL policy, to be an insured, Bonilla must be either the named insured, a partner in the named insured, an executive officer, or shareholder of the named insured. See *id.* Bonilla bears none of these relationships to Jolly Chef, the named insured, and the defendants do not contend otherwise. There are, however, other ways to be an insured under the umbrella policy. The umbrella policy contains an omnibus clause, which states that when the

primary policy does not apply, anyone "using an auto owned by Jolly Chef" with Jolly Chef's permission is covered under the umbrella policy. *Id.* Molina argues that Bonilla was using Truck 219, an auto owned by Jolly Chef, with Jolly Chef's permission at the time of the fire. Molina's Response at 38.

It is undisputed that Bonilla had permission to use Truck 219 at the time of the accident. The plaintiffs, however, argue that Bonilla was not "using" the truck at the time of the fire. EMC's Reply to Response to Motion for Summary Judgment at 8. The court has already held that, under Texas law, Molina and Fernandez were not "using" the truck at the time of the fire. For the court to hold that Bonilla was using the truck at the time of the fire would require the court to hold that the word "use" has an entirely different meaning in the context of the umbrella policy.

There are cases suggesting that the word "use" may have a different meaning in the context of an omnibus clause. See, *e.g.*, *Associated International Insurance Company v. Blythe*, 286 F.3d 780 (5th Cir. 2002) (applying Texas law). In *Blythe*, a construction company, RNC, hired Boyd Blythe ("Blythe") to supervise a crew. *Id.* at 781. The crew's task was to hang cable television wire using a truck that had a mechanical bucket, large enough to hold a man, that would reach up to allow the crew member to hang the wire. *Id.* at 781-82. While performing this task, the bucket came into contact with power lines and caused a fire which severely burned the crew member in the bucket. *Id.* at 782. On the day this incident occurred, Blythe was not

present to supervise.  *Id.*  RNC had purchased insurance which contained an omnibus

clause, providing coverage for "[a]nyone else while using with [RNC's] permission a

covered auto."  *Id.* at 782.  The injured crew member brought suit in state court

against several parties, including Blythe.  *Id.*  Blythe was held liable.  *Id.*  Soon after

the jury rendered its verdict, Blythe filed a claim with the construction company's

insurance provider, arguing the policy covered him.  *Id.*  The district court held that

Blythe was not "using" the vehicle when the accident occurred because he was not

present at the work site.  *Id.*  On appeal, the Fifth Circuit reversed and held that

Blythe was "using" the vehicle at the time of the accident.  *Id.* at 787.

In reaching this conclusion, the Fifth Circuit held that "use" "includes putting

or bringing a thing into action or service and employing a thing for or applying a

thing to a given purpose."  *Id*. at 783.  Here, the court reasoned that "[w]hen Blythe

entrusted the operation of the truck to [the driver], he was putting the truck into

service to perform the task assigned to him by [the insured construction company]."

*Id.* at 783-84.  The court found that Blythe was using the vehicle despite the fact that

he was not the person directly interacting with the vehicle.  In reaching this

conclusion, the court relied on several Texas cases.  *Snyder v. Allstate Insurance*

*Company*, 485 S.W.2d 769 (Tex. 1972) (interpreting an omnibus clause to provide

coverage for injuries that occurred while a man who had permission to use the car --

not from the owner, but from someone else who had permission from the owner --

was driving); *Phoenix Insurance Company v. Allstate Insurance Company*, 412 S.W.2d 331 (Tex. Civ. App.--Corpus Christi 1967, no writ) (same).  These Texas cases  hold that omnibus clauses can provide coverage for damages occurring while a "second permittee" is driving.  Applying that holding here leads the court to conclude that the fact that Bonilla was not the one directly interacting with the vehicle does not prevent the omnibus clause from providing coverage.

What these Texas cases do not address, however, is whether the omnibus clause provides coverage when the second permittee is interacting with the vehicle in a way that does not constitute a "use" under the primary policy.  In fact, any discussion of whether the vehicle was being used as a vehicle when the injury occurred is entirely absent from these decisions.  Instead, these cases focus on whether "(1) the original permittee is riding in the car with the second permittee at the time of the accident, or (2) the second permittee, in using the vehicle, is serving some purpose of the original permittee."  *Phoenix Insurance Company*, 412 S.W.2d at 336.  One could conclude from these cases that Texas courts apply a different definition of the word "use" in interpreting omnibus clauses.  To do so, however, would ignore the fact that all such cases the court has reviewed clearly involve using the vehicle as a vehicle, because they involve only driving.  The courts which decided *Snyder* and *Phoenix Insurance* would have been wasting their time to discuss whether driving was use of a vehicle as a vehicle.  Thus, the court concludes that *Blythe*,

*Phoenix Insurance*, *Snyder*, and other cases like them do not stand for the proposition that the word "use" in an omnibus clause does not require use of the vehicle as a vehicle.

The court recognizes that *Blythe* presents a set of facts where one could at least argue that the vehicle was not being used as a vehicle, but merely as a mechanical bucket. The bucket came into contact with the power lines, however, as a result of the driver's driving the vehicle. *Blythe*, 286 F.3d at 782. At the request of the man in the bucket, the driver drove the truck in order to move the bucket closer to a utility pole. *Id.* It was this driving that brought the bucket into contact with the power lines. *Id.* Thus, *Blythe* is yet another case where any discussion about whether the vehicle was being used as a vehicle at the time of the injuries would have been a waste of the court's time.

In short, this court is convinced that a Texas court has yet to address whether an omnibus clause includes, as an insured, someone who was not using the vehicle as a vehicle. Faced with this issue of first impression, the court can only assume that Texas courts would interpret the word "use" to mean the same thing in an omnibus clauses as anywhere else in an auto policy. The omnibus policy at issue here states that an insured is anyone using an auto owned by Jolly Chef with Jolly Chef's permission. As discussed above Molina and Fernandez were not "using" the vehicle at the time of the accident. It is true that *Blythe* suggests that, had Molina and

Fernandez been using the vehicle when the accident occurred, the court could have imputed that use to Bonilla, as the individual who asked Molina and Fernandez to carry out his purpose with the truck.  As Molina and Fernandez were not using the truck, however, the court concludes that there is no "use" to impute to Bonilla. Bonilla is therefore not an insured within the meaning of the umbrella policy, because he was not "using" the vehicle.  The plaintiffs' motion for summary judgment on the issue of coverage under the umbrella policy is granted.

III.  <u>CONCLUSION</u>

For the reasons discussed above, the plaintiffs' motion for summary judgment is **GRANTED**.

Within ten days of this date, counsel for the plaintiffs shall submit a proposed form of judgment in conformity with this memorandum opinion and order.

**SO ORDERED**.

April 1, 2009.


A. JOE FISH
Senior United States District Judge

- 18 -