UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EMPLOYERS MUTUAL CASUALTY ) <br> COMPANY, ET AL., ) <br> ) <br> Plaintiffs, ) <br> ) <br> VS. ) <br> ) <br> JUAN MIGUEL BONILLA a/k/a Mike, ) <br> ET AL., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br><br> 3:07-CV-0648-G |

## MEMORANDUM OPINION AND ORDER

Before the court are the cross motions for summary judgment filed by the plaintiffs, Employers Mutual Casualty Company and Emcasco Insurance Company (collectively, "EMC"), and the defendants, Juan Miguel "Mike" Bonilla ("Bonilla") and Isabel Molina ("Molina"). For the reasons set forth below, Bonilla's and Molina's respective motions are granted, and EMC's motion is denied.

I. BACKGROUND

A. Factual Background

Isabel Molina suffered severe injuries when an explosion rocked a mobile catering truck she was cleaning. Trial Transcript ("Tr."), *Molina v. Jolly Chef Express,*

*Inc.*, No. 03-5067-E (101st Dist. Ct., Dallas County, Tex. April 10, 2007) 100:4-12, *located in* Appendix to Brief in Support of EMC's Motion for Summary Judgment ("EMC Appendix") at 190 (docket entries 52-2 to -9).  That truck, Truck 219, was leased to Mike Bonilla by Jolly Chef Express, Inc. ("Jolly Chef").  Oral Deposition of Juan Miguel Bonilla, April 10, 2006 ("Bonilla Deposition") 9:14-20, *located in* Appendix to Defendant Juan Bonilla's Brief in Support of Motion for Summary Judgment ("Bonilla Appendix") at 3 (docket entries 94-2, 94-3).  Molina sued Bonilla and Jolly Chef in a Texas state court, where she took nothing against Jolly Chef, but received a $1,832,933.58 judgment against Bonilla.  Plaintiffs' First Amended Complaint for Declaratory Judgment ¶ 9 (docket entry 50).  As the insurer of Truck 219 under a Commercial General Liability ("CGL") policy, a Commercial Auto Liability Policy (the "auto policy"), and a Commercial Umbrella Policy (the "umbrella policy"), EMC initiated this action to obtain a judgment declaring no coverage or liability under any of those policies.  See generally *id.*

Bonilla operated a fleet of mobile catering trucks out of Jolly Chef's commissary lot.  Bonilla Deposition 9:1-20, *located in* Bonilla Appendix at 3.  Each morning, laborers appeared at the lot looking for work as a driver or cook on one of the trucks.  Tr. 227:6-18, *located in* Appendix to Defendant Molina's Motion for Summary Judgment ("Molina SJ Appendix") at App.199 (docket entry 97).  Molina was one of those laborers.  Tr. 138:9-25, *located in* Bonilla Appendix at 49.

On February 13, 2002, Fabricio Fernandez ("Fernandez") selected Molina from the pool of day laborers gathered at Jolly Chef's lot to work as a cook on Truck 219. Tr. 97:7-11, *located in* EMC Appendix at 190. After completing their route and returning to Jolly Chef's lot, Fernandez poured a flammable substance on the truck's floor to loosen grease that had accumulated there throughout the day. Oral Deposition of Isabel Molina, August 31, 2004 ("Molina Deposition") 37:7-14, *located in* EMC Appendix at 220. Fernandez then left to deliver the day's earnings to Bonilla. Tr. 98:19-23, *located in* EMC Appendix at 190. While washing the dishes inside Truck 219, Molina heard an explosion and became suddenly engulfed in flames -- a pilot light from the stove ignited the liquid that Fernandez poured on the floor. Tr. 98:19-23, 100:9-12, *located in* EMC Appendix at 190.

Molina first appeared at Jolly Chef's lot to find work approximately three months before the accident. Tr. 138:12-25, *located in* Bonilla Appendix at 49; Molina Deposition 24:10-13, *located in* EMC Appendix at 209. Unsuccessful, she was told to return the next day. Tr. 138:12-25, *located in* Bonilla Appendix at 49. She did, and was hired by Manuel Pocasangre ("Pocasangre") to serve as a cook on a truck that belonged to Bonilla. Tr. 139:4-18, *located in* Bonilla Appendix at 50. Molina did not receive any formal training or instructions on how to cook the food or operate the appliances in the mobile kitchen. Molina Deposition 26:11-13, *located in* EMC Appendix at 210. Pocasangre simply asked whether she knew how to cook and gave

her that responsibility after she answered affirmatively.  Tr. 116:18-24, *located in* EMC Appendix at 192.  Molina, however, knew how to cook from her past experience at Dallas Express, another mobile-catering company.  Molina Deposition 26:4-10, *located in* EMC Appendix at 210; Tr. 105:13-25, *located in* EMC Appendix at 191.

      For the next three months, Molina worked as a cook on mobile catering trucks operated out of Jolly Chef's commissary lot.  Those trucks belonged to either Jolly Chef or Bonilla.  Tr. 138:5-8, *located in* Bonilla Appendix at 49.  She worked only when she wanted, she was never penalized for not working, and she was always paid in cash at the end of the day by either the driver of the truck or Bonilla.  Affidavit of Isabel Molina ("Molina Affidavit") at 1, *located in* Molina SJ Appendix at App.140; Affidavit of Juan Miguel Bonilla ("Bonilla Affidavit") at 2, *located in* Molina SJ Appendix at App.125.  She was never paid overtime (despite sometimes working eleven or twelve hours each day, Tr. 165:11-19, *located in* Bonilla Appendix at 53), she never had taxes withheld from her pay, and she did not receive a W-2.  Bonilla Affidavit at 2, *located in* Molina SJ Appendix at App.125.

      On days she wanted to work, Molina simply arrived at Jolly Chef's lot by 5:00 in the morning.  Tr. 95:15-21, *located in* EMC Appendix at 189.  From there, a driver would select her to serve as a cook.  Molina Deposition 26:18-24, *located in* EMC Appendix at 210.  The driver purchased all of the food and provided all of the

supplies necessary for Molina to do her job. Oral and Videotaped Deposition of Manuel Pocasangre, September 13, 2006 ("Pocasangre Deposition") 63:3-17, *located in* EMC Appendix at 252. If she needed other materials, she could ask the driver to secure them. Molina Deposition 33:11-16, *located in* EMC Appendix at 217. The driver chose which route to pursue, which food to stock on the truck, which cook to hire, and what time to leave from and return to Jolly Chef's lot. Tr. 212:24-213:9, *located in* Molina SJ Appendix at App.195-96; Pocasangre Deposition 63:3-4, *located in* EMC Appendix at 252. Molina had the limited responsibilities of cooking, serving customers, and cleaning the truck after the day's work. Molina Deposition 28:6-11, *located in* EMC Appendix at 212.

### B. Procedural Background

Both the plaintiffs and the defendants have moved for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine issue as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[1] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v.*

---

[1] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response

to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II. ANALYSIS

The only question before the court on these cross motions for summary judgment is whether the auto policy's employee exclusion shields EMC from its duty to indemnify Bonilla.[2] The exclusion reads:

B. EXCLUSIONS

This insurance does not apply to any of the following:

* * *

4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

Bodily Injury to:

> a. An employee of the insured arising out of and in the course of employment by the insured; or
>
> b. The spouse, child, parent, brother or sister of that employee as a consequence of a. above.

This exclusion applies:

---

[2] The parties agree that the umbrella policy is form-following to the auto policy, such that the umbrella policy provides coverage if the auto policy does. EMC's Brief in Support of its Motion for Summary Judgment ("EMC Brief") at 22 (docket entry 93); Defendant Juan Miguel "Mike" Bonilla's Brief in Support of Response to Plaintiffs' Motion for Summary Judgment ("Bonilla Response") at 19 (docket entry 98-1); Defendant Molina's Reply Brief to Plaintiff EMC's Response to Defendant's Motion for Summary Judgment ("Molina Reply") at 14 (docket entry 109).

>   (1)  Whether the insured may be liable as an employer or
>   in any other capacity; and
>
>   (2)  To any obligation to share damages with or repay
>   someone else who must pay damages because of injury.
>
> But this exclusion does not apply to bodily injury to domestic employees not entitled to workers compensation benefits or to liability assumed by the insured under an insured contract.

Bonilla Appendix at 68-69.

Under Texas law, interpretation of an insurance contract is governed by the same rules that apply to contracts in general. *American States Insurance Company v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998). Where an exception or limitation in an insurance policy is ambiguous, however, it must be strictly construed against the insurer, and the court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (citation and quotation marks omitted).

Here, the parties agree that word "employee" should be construed in accordance with Texas' definition of the term. EMC Brief at 8; Defendant Juan Miguel "Mike" Bonilla's Brief in Support of Motion for Summary Judgment ("Bonilla Brief") at 6 (docket entry 94-1); Brief in Support of Defendant Molina's Motion for Summary Judgment ("Molina Brief") at 10 (docket entry 96). A worker's status as an employee or independent contractor depends on whether the employer has "the right

to control the progress, details, and methods of operations of the work." *Limestone Products Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). "'Control' as would define a relationship as one of employer/employee is control over the details of the work itself and the worker's physical conduct, not simply the end result." *Wilson v. Mitul Patel*, No. 03-03-00275-CV, 2004 WL 579073, at *1 (Tex. App.--Austin March 25, 2004, no pet.). The employer must control not merely the end sought, "but also the means and details of its accomplishment." *Limestone*, 71 S.W.3d at 312. Examples include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson v. Travelers Indemnity Company of Rhode Island*, 789 S.W.2d 277, 278-79 (Tex. 1990).

Texas courts generally consider five factors when analyzing whether an employer has a right to control a person's work:

> (1) the independent nature of the worker's business;
> (2) the worker's obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether the worker is paid by unit of time or by the job.

*Limestone*, 71 S.W.3d at 312 (citing *Pitchfork Land & Cattle Company v. King*, 162 Tex. 331, 346 S.W.2d 598, 603 (1961)); see also *Hoechst Celanese Corporation v. Compton*,

899 S.W.2d 215, 220 (Tex. App.--Houston [14 Dist.]1994, writ denied) (same). "It is not necessary that each of the above factors be present to find that the worker is an independent contractor," *Wilson*, 2004 WL 579073, at *1, and no one factor is determinative. See *Shannon v. Western Indemnity Company*, 257 S.W. 522, 524 (Tex. Comm'n App. 1924, judgm't adopted) ("It is seldom or ever that any one of these elements is decisive of the question."). The right to control is ordinarily a question of fact, but "if the controlling facts are undisputed, whether the relationship that exists is that of an employee or of an independent contractor is a question of law." *Farlow v. Harris Methodist Fort Worth Hospital*, 284 S.W.3d 903, 912 (Tex. App.--Fort Worth 2009, pet. denied) (citing *Dow Chemical Company v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)).

The undisputed facts of this case prove that, as a matter of law, Molina was as an independent contractor at the time of her accident.

The first factor -- independent nature of the worker's business, *Limestone*, 71 S.W.3d at 312, -- supports this conclusion. Molina had almost exclusive authority over when and for whom she worked. Some days she worked on trucks owned or operated by Bonilla, and some days she worked on trucks belonging to Jolly Chef. In fact, for whom she worked on any particular day depended on which driver selected her as a cook. She worked only when she wanted and she was never penalized for not working. Moreover, if Molina did not do a satisfactory job, Bonilla or his drivers

could kick her off Bonilla's truck (and refuse to hire her in the future), but they could not prevent her from returning to Jolly Chef's commissary lot seeking work as a cook on a different truck.  Tr. 188:23-189:5, *located in* Molina SJ Appendix at App.184-85.  Only Jolly Chef could do that.  *Id.*  Given her unbridled independence in determining when and for whom she worked, the first of the *Limestone* factors supports the defendants' position that Molina was an independent contractor.  Cf. *Thompson*, 789 S.W.2d at 279 (finding that jockeys were independent contractors because, among other things, they were not prevented from racing at other tracks on any given day, not required to remain at the track for the entire day, and not required to ride any particular horse while at the track); *Mid-Continent Casualty Company v. Davis*, No. 3:08-CV-1478-P, 2011 WL 13727, at *5 (N.D. Tex. Jan. 3, 2011) (Solis, J.) (defining workers' business as "quite independent" based on their freedom to chose when to start and stop work each day, the particular tasks to be performed, and which tools to use).

The second factor -- the worker's obligation to furnish the tools, supplies, and materials necessary to perform the job, *Limestone*, 71 S.W.3d at 312, -- adds very little to the court's analysis of Molina's status because the mobile catering business, particularly as run out of Jolly Chef's commissary lot, is not conducive workers providing their own supplies or materials.  The mobile catering trucks on which Molina worked were equipped with cooking devices.  Tr. 96:4-9, *located in* EMC

Appendix at 189.  Molina's job did not require any specialized equipment or supplies, and the undisputed evidence shows that Jolly Chef required drivers to purchase $800 worth of goods from its commissary every week in exchange for permission to operate a truck off the lot.  Tr. 163:2-20, *located in* Molina SJ Appendix at App.164.  As a cook, Molina generally made about $60 per day, Molina Deposition 22:24-25, *located in* EMC Appendix at 207, so even if she worked every day of every week, she would have not been able to cover those costs.  In light of these facts, Molina's failure to furnish her own tools, supplies, and materials does not evidence an employer-employee relationship.  Cf. *Davis*, 2011 WL 13727, at *5-6 (declaring workers independent contractors as a matter of law despite evidence that they were not responsible for furnishing the materials needed to complete the job).

*Mendoza v. Clingfost*, No. 12-08-00315-CV, 2010 WL 827295, at *5 (Tex. App.--Tyler March 10, 2010, no pet.), is instructive.  There, the Texas Court of Appeals determined that a day laborer was an independent contractor, as a matter of law -- notwithstanding evidence in the record showing that the employer "provided the necessary tools" -- because the laborer "retained the right to control the progress of the work, except for the final result."  *Id.* at *5.  Here, the same result must obtain.  First, given the nature of the mobile catering business, one would not expect the cooks to furnish their own tools, supplies, or materials.  Second, the drivers -- not Bonilla -- purchased the food and supplies needed for the trucks and were responsible

for satisfying the $800 weekly-purchasing requirement imposed by Jolly Chef as a condition for use of its commissary lot.  Finally, the other undisputed evidence (discussed below) shows that Molina retained the right to control the progress of her work.  The fact that the drivers purchased groceries, stocked the trucks with food, and provided the necessary cooking and cleaning supplies, simply reflects the general structure of the mobile catering business, whereby the drivers (and to some extent Bonilla) could control the final result of Molina's work, but not the means and details of its accomplishment.  See *Davis*, 2011 WL 13727, at *5 ("[D]etermining the type of materials to be used, [or] the time for completion" are examples of "ways in which the general contractor controls the crew's work and the final results.").  The second *Limestone* factor therefore cuts slightly against finding that Molina was an independent contractor, but it does not outweigh the other factors supporting an opposite conclusion.

The third factor -- the worker's right to control the progress of the work, *Limestone*, 71 S.W.3d at 312, -- buttresses Molina's claim that she was an independent contractor.  Bonilla never told Molina how to do her job.  Molina Deposition 26:1-3, *located in* EMC Appendix at 210.  While the drivers decided which food would be stocked in the truck and how much the food being sold would cost, Molina could cook what she wanted, when she wanted, and however she wanted.  There were no deadlines imposed for preparing or cooking the food.  Neither Bonilla

nor the drivers offered her any instructions on what to cook or how to cook it. The trucks did not have menus, and Bonilla did not require Molina -- or any other cook -- to prepare or cook the food in accordance with a standardized plan.

The fact that Pocasangre testified to working as a "supervisor" for Bonilla, who was the "boss there," does not change the court's analysis or conclusion. An employer may give direction as to the specifications of a job, the character of materials, or the general workmanship requirements, and still maintain an independent contractor relationship. *Wilson*, 2004 WL 579073, at *1. Bonilla's engagement of Pocasangre (and other "supervisors") to find new routes, develop new business, and generally oversee the work of the drivers and the cooks, reflects a general hierarchy that is to be expected of any working relationship.[3] See *United States Fidelity & Guaranty Company v. Goodson*, 568 S.W.2d 443, 447 (Tex. Civ. App.--Texarkana 1978, writ ref'd n.r.e.). The same is true of the general consensus that Bonilla was "the boss there." See *id.* This is evidence of general supervision, which "does not constitute evidence of an employer-employee relation." *Id.* at 446. Because Molina controlled the progress of

---

[3] Importantly, the court finds that no reasonable trier of fact could find that the drivers were Bonilla's employees. They too were independent contractors. The undisputed evidence shows that the drivers purchased their own groceries and supplies, controlled which cooks they hired on a daily basis, decided the prices of the food being sold, paid their own tickets and/or fines for health violations, were responsible for deciding who would clean the trucks and when, were paid on commission, and were only hired by Bonilla on a weekly basis. Brief in Support of Defendant Molina's Response to EMC's Motion for Summary Judgment at 37-46 (docket entry 104) (quoting record testimony on these points). The evidence is overwhelming, and EMC's argument to the contrary is without merit.

her work and Bonilla maintained only general supervision over the final results, the third *Limestone* factor supports a finding that Molina was an independent contractor.

Finally, the undisputed evidence relating to the fourth and fifth *Limestone* factors -- the time for which she was employed, and the method of payment, *Limestone*, 71 S.W.3d at 312, -- strongly evidence Molina's status as an independent contractor.  Molina worked as a cook out of Jolly Chef's commissary lot for approximately three months before the accident.  She did not, however, work exclusively for Bonilla during that time.  Instead, she worked for both Bonilla and Jolly Chef, and for whom she worked on any given day depended on which driver selected her -- from the pool of laborers, who appeared daily at Jolly Chef's lot -- to cook on his truck.  Bonilla could terminate Molina's engagement from a particular job, but he could not preclude her from returning the very next day to Jolly Chef's lot seeking work in the very same capacity.  These facts, taken together, prove that Molina worked on a daily, job-by-job, basis.  See *Davis*, 2011 WL 13727, at *5 (explaining that contractors, who worked with company over "many years," were employed on job-by-job basis because the crew members were not guaranteed further work after a job was completed).  When she did work, moreover, Molina was always paid daily, in cash and without withholdings for taxes.  As a day laborer, she received no benefits or sick leave.  Her pay was not contingent on the number of hours she

worked. And she received no overtime. Simply put, Molina worked and was paid as if she were an independent contractor. See *Mendoza*, 2010 WL 827295, at *5.

Considering the *Limestone* factors, the court finds the undisputed facts so heavily support a finding that Molina was an independent contractor that no trier of fact could reasonably conclude otherwise. Because Molina was an independent contractor when the accident occurred, the auto policy's employee exclusion is inapplicable. Bonilla and Molina are entitled to judgment as a matter of law.

### III.  CONCLUSION

For the reasons stated above, the EMC's motion to for summary judgment is **DENIED**, Bonilla's motion for summary judgment is **GRANTED**, and Molina's motion for summary judgment is **GRANTED**. Counsel for Bonilla and Molina -- as the prevailing parties -- shall submit, within 14 days of this date, a proposed form of judgment conforming to this memorandum opinion and order.

**SO ORDERED**.

August 16, 2011.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**